UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:16-CV-806 (CEJ) |
| LYNN STUART, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for summary judgment. Defendant has filed a memorandum in opposition, and all issues are fully briefed.

### I. Background

Plaintiff Allied Property and Casualty Insurance Company issued an automobile insurance policy to defendant Lynn Stuart, providing underinsured motorist coverage (UIM) of up to $100,000 per person. On June 10, 2011, defendant sustained injuries in an automobile accident. She ultimately recovered $250,000—the full amount of coverage available under the negligent driver's insurance policy. However, defendant's damages exceeded $250,000. She therefore submitted a claim to plaintiff for $100,000 under the UIM provision in her policy. Plaintiff denied the claim. Plaintiff now brings this action pursuant to 28 U.S.C. § 2201, seeking a declaration that defendant is not entitled to UIM coverage under the policy.

### II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Discussion**

In this diversity action, the Court is bound by the decisions of the Missouri Supreme Court regarding issues of substantive state law. *Owners Ins. Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013). Decisions by the Missouri Court of Appeals may be used as "an indication of how the Missouri Supreme Court may rule," but the Court is "not bound to follow these decisions." *Id.*

"Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007) (en banc). In construing the terms of an insurance policy, Missouri courts apply "the meaning an ordinary person of average understanding would attach if purchasing insurance, and resolve[] ambiguities in favor of the insured." *Dutton v. Am. Family Mut. Ins. Co.*, 454 S.W.3d 319, 322 (Mo. 2015). But, "[i]f the policy's language is unambiguous, it must be enforced as written." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. 2014). Ambiguities arise when there is "duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (citation omitted). Ambiguity also arises where an insurance clause appears to furnish coverage but other provisions signal that such coverage is not provided. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 134 (Mo. 2007) (en banc). However, "[d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd*, 223 S.W.3d at 163. Finally, "[a] court may not create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991) (en banc).

The UIM Coverage endorsement in the policy involved in this case provides as follows:

**I. UNDERINSURED MOTORISTS COVERAGE INSURING AGREEMENT**

> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
> 1. Sustained by an "insured"; and
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".
>
> We will pay under this coverage only if 1. or 2. below applies:
> 1. The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or
> 2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:
>    a. Have been given prompt written notice of such tentative settlement; and
>    b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

[Doc. #1-1 at 33].

Then, within that same section, the policy sets forth the following definition:

> C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

*Id.*

The above-quoted excerpt describes an "underinsured motor vehicle" as one that has a limit for liability that is <u>less than the limit of liability for this coverage</u>. The parties stipulate that the defendant had $100,000 in UIM coverage. [Doc. #20 at 2; Doc. #17 at 2]. They also stipulate that the "limit of liability" under the negligent driver's policy was $250,000. [Doc. #17 at 1; Doc. #20 at 1]. By its plain language, therefore, the policy definition of "underinsured motor vehicle" does not apply to the negligent driver's vehicle, resulting in no coverage for defendant's claim. *See Burger v. Allied Prop. &*

4

*Cas. Ins. Co.*, 822 F.3d 445, 448 (8th Cir. 2016) (holding that, under Missouri law, a tortfeasor with $100,000 liability limit was not an underinsured motorist within the meaning of a UIM provision with a liability limit of less than $50,000); *Owners Ins. Co. v. Hughes*, 712 F.3d 392, 394 (8th Cir. 2013) (because tortfeasor's coverage was equal to liability limit of insured's policy, tortfeasor was not underinsured motorist).

The Missouri Supreme Court addressed a similar UIM provision in *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379 (Mo. 1991) (en banc). The insured in *Rodriguez* was injured in a car accident with a negligent driver whose insurance company paid $50,000, the limit of the negligent driver's policy. *Rodriguez*, 808 S.W.2d at 380. The insured's damages exceeded $50,000 and she sought coverage under her policy, which provided UIM coverage up to a limit of $50,000. *Id.* In *Rodriguez*, as here, the insuring agreement defined "underinsured motor vehicle" as a vehicle for which the "limit for bodily injury is less than the limit of liability for this coverage." *Id.* at 380-81. *Rodriguez* held that this definition of underinsured motor vehicle was "neither ambiguous nor misleading." *Id.* at 383. And, under this definition, the insured was not entitled to coverage because the tortfeasor's bodily injury limit was not "less than" the insured's UIM limit and, therefore, the vehicle driven by the tortfeasor was not an "underinsured motor vehicle." *Id.* at 382.

Defendant does not dispute that, under *Rodriguez*, the definition of "underinsured motor vehicle" is unambiguous. Instead, defendant cites a number of subsequent Missouri cases in which the courts found that ambiguity arose from other provisions of UIM policies. [Doc. #21 at 3, 5–7, 10] (citing *Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687 (Mo. 2009) (en banc); *Ritchie v. Allied Prop. &*

*Cas. Ins. Co.*, 307 S.W.3d 132 (Mo. 2009) (en banc); *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129 (Mo. 2007) (en banc); *Miller v. Ho Kun Yun*, 400 S.W.3d 779 (Mo. Ct. App. 2013); *Long v. Shelter Ins. Co.*, 351 S.W.3d 692 (Mo. Ct. App. 2011); *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113 (Mo. Ct. App. 2011); *Am. Family Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51 (Mo. Ct. App. 2006); *Ware v. Geico Gen. Ins. Co.*, 84 S.W.3d 99 (Mo. Ct. App. 2002); *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308 (Mo. Ct. App. 1999); *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673 (Mo. Ct. App. 1996).

Of these cases, only *Jones*, *Seeck*, and *Ritchie* were decided by the Missouri Supreme Court and therefore bind this Court. And, as addressed by other federal courts, these cases do not lessen the force of the holding in *Rodriguez*. *See Owners Ins. Co. v. Hughes*, 712 F.3d 392, 395 (8th Cir. 2013) (explaining that *Jones* "actually confirms . . . the operative holding of *Rodriguez*"); *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 865 (E.D. Mo. 2015) (distinguishing *Seeck* because an "excess insurance" provision applied to insureds who were injured while occupying a motor vehicle other than their own); *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 959 (E.D. Mo. 2014) (reasoning that in *Jones* and *Ritchie*, "it was undisputed that the definition of underinsured motor vehicle was satisfied and that some level of underinsured motor vehicle coverage applied."). Moreover, as in *Morton*, these cases are also "factually distinguishable from the instant case." 140 F.Supp.3d at 856.

Because under *Rodriguez*, the definition of "underinsured motor vehicle" is unambiguous here, plaintiff's motion will fail only there is some other aspect of the policy that creates "duplicity, indistinctness, or uncertainty" as to this definition or

6

renders it "reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (en banc) (citation omitted). Defendant therefore disputes plaintiff's contention that "no language in the Policy injects ambiguity into the clear and plain meaning of 'underinsured motor vehicle.'" [Doc. #16 at 6]. Defendant claims that ambiguities arise from (1) the Declarations Page, (2) the Insuring Agreement provision, (3) the set-off provision of the Limit of Liability section, (4) the Other Insurance clause, and (5) statements on plaintiff's website regarding underinsured motorist coverage.

### 1. **The Declarations Page**

The Declarations page lists "Coverage and Limits of Liability," in table format. The table shows the UIM coverage or limit of liability per policy as $100,000 for each person and $300,000 for each accident. *Id.* The Declarations page separately lists the same amounts for uninsured motorist coverage. *Id.* And the table splits premiums for underinsured and uninsured motorist coverage. *Id.* No figure appears in the place where a deductible would be identified. *Id.* The Declarations page also cites to "endorsements forming a part of this policy," which includes the AA 0311 MO (11-09), the endorsement for UIM coverage. *Id.* at 6. Notably, although the definitions section of the policy references the Declarations page, it does not define it. *Id.* at 13–14.

Defendant argues that the absence of a deductible or set-off on the Declarations page would lead an insured to reasonably believe that the $100,000 liability limit applies without such limitations. Defendant primarily relies on *Long v. Shelter Mutual Insurance Company*, 351 S.W.3d 692 (Mo. Ct. App. 2011), to support her argument. [Doc. #21 at 10].

7

Other courts have questioned this reasoning. *See, e.g., Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 867–68 (E.D. Mo. 2015) (finding "nothing ambiguous or misleading about a policy that offers underinsured motorist coverage in a certain amount on its face sheet and then defines 'underinsured motor vehicle' as it is defined here."); *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 956 (E.D. Mo. 2014) (rejecting the *Fanning* court's "suggest[ion] that . . . in order to avoid being ambiguous, Progressive's policy would need to state on the declarations page the 'manner in which the[ ] maximum limits [reflected on the declarations page] could be reduced' or 'nullified.'"). Indeed, as a matter of policy interpretation, "the declarations page is not a complete description of the coverage in an insurance policy." *Swadley v. Shelter Mut. Ins. Co.*, No. SD 34129, 2016 WL 3944716, at *5 (Mo. Ct. App. July 19, 2016). That is, "[t]he declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." *Floyd–Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. 2014) (en banc). "The 'declarations' are introductory only and subject to refinement and definition in the body of the policy." *Id.* (internal quotation and citation omitted). "The rest of the policy often contains terms that limit or narrow the broad coverage stated in the Declarations page, such as definitions, exclusions, endorsements, and other miscellaneous provisions*." Estate of Hughes v. State Farm Mut. Auto. Ins. Co.*, 485 S.W.3d 357, 361–62 (Mo. Ct. App. 2016) (rejecting an argument that a court should restrict policy interpretation "to a reading of the coverage outlined in the Declarations page without considering the clear limitations and exclusions expressed in the Policy Booklet.").

Additionally, defendant's citation to *Long v. Shelter Insurance Companies* does not successfully buttress her argument. In *Long*, the insurer did not dispute that the tortfeasor's vehicle qualified as an "underinsured motor vehicle"; to be sure, the insuring agreement guaranteed payment for "uncompensated damages." 351 S.W.3d 692, 697 (Mo. Ct. App. 2011). Instead, the parties contested whether the policy was ambiguous such that anti-stacking and set-off provisions did not apply. *Id.* at 695. Moreover, the factors that led the *Long* court to determine that there would be "no reason for the ordinary insured to look any further" after the Declarations Page are not present in this case. *Id.* at 703. Namely, the *Long* court reasoned that ambiguities arose from the definition of "Declarations," and the Declarations Page's listing of UIM "coverage" without qualification. *Id.* These aspects of the policy in *Long* are not present here. *See Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445 (8th Cir. 2016) (finding that a Declarations Page presented no conflicts or ambiguities). In the instant case, the Declarations page offers a snapshot of the insurance policy in an abbreviated table format. [Doc. #1-1 at 5–6]. Also, the second page lists a host of endorsements "forming a part of this policy." [Doc. #1-1 at 6]; *see Burger*, 822 F.3d at 449 (reasoning that a Declarations page that included information that "several endorsements form part of the policy" did not "render[] ambiguous the otherwise clear limitations of UIM coverage.") Otherwise stated, this section informs the insured that they must examine the other provisions of the policy to determine the limits of coverage. *See id; Owners Ins. Co. v. Craig*, No. SD 34053, 2016 WL 3964628, at *6 (Mo. Ct. App. July 19, 2016) (finding that a declarations page did not create ambiguity even though it "contained no caveat or disclaimer regarding UIM coverage," because "it

9

did not state that it was the sole expression of UIM coverage, and it referenced other forms, including the UIM endorsement."). Accordingly, the Court agrees with plaintiff that "[n]othing here suggests that the declarations page provides anything other than a summary of the policy's essential terms." *Burger,* 822 F.3d 445 at 449 (citing *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 & n. 9 (Mo. 2014)); [Doc. #16 at 6].

Defendant also argues that the Declarations page creates confusion because it does not state whether the UIM policy provides "gap" or "excess" coverage. [Doc. #21 at 7–8]. She cites *Miller v. Ho Kun Yun*, to support this contention. *Id.* at 6–7; 400 S.W.3d 779 (Mo. Ct. App. 2013).

The plaintiff in *Rodriguez* made a similar argument, asserting that the policy should be construed to provide excess coverage under the "objective reasonable expectations doctrine." *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 381 (Mo. 1991). The court held that application of this doctrine depends on the presence of an ambiguity in the contract language. *Id.* at 382; *see also Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 957 (E.D. Mo. 2014) ("*Rodriguez* expressly prohibits a court from finding an ambiguity solely by giving effect to the insured's reasonable expectation.").

Moreover, defendant's citation to *Miller* is inapposite, as the facts are distinguishable. *Miller* reasoned that the "declaration sheet . . . does not provide an alert for the ordinary insured that the coverage is gap coverage." 400 S.W.3d at 787. Conversely, here, the table on the Declarations page defines the dollar amounts set forth therein as "Coverage <u>And Limits of Liability (In Dollars).</u>" [Doc. #1-1 at 5]; *cf. Miller*, 400 S.W.3d at 790 (explaining that "[t]he declarations page

10

here does not help by its use of the word 'coverage' (as opposed to 'limits of liability')." Thus, it designates that the amounts may serve as limits rather than simple coverage. Moreover, the table delineates the differences between UIM and uninsured motor vehicle provisions, and their corresponding premiums. *Cf. Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 315–16 (Mo. Ct. App. 1999) (where the insurer "arguably treated uninsured motorist coverage and underinsured motorist coverage the same, because both are lumped together on the declarations page . . ."); *see Miller*, 400 S.W.3d at 788. This may aid the insured to recognize that underinsured and uninsured coverage function differently. And finally, as previously noted, the Declarations page expressly alerts the ordinary person to the relevant UIM endorsement. [Doc. #1-1 at 6].

### 2. **The "Insuring Agreement" Provision**

Defendant asserts that an ambiguity arises under the "Insuring Agreement" provision. In particular, she argues that "[w]ithout a doubt, an insured with an average understanding would read the plain language of [plaintiff's] policy to mean that the underinsured motorist endorsement would pay the insured the excess over and above what the insured received from the tortfeasor to the extent of their actual damages." [Doc. #21 at 11].

The Insuring Agreement states that coverage is available for bodily injury arising from an "underinsured motor vehicle." [Doc. #1-1 at 33]. The Insuring Agreement also includes the definition of "underinsured motor vehicle" which, as discussed above, includes only those vehicles for which the limits of liability are less than the insured's coverage limit. *Id.* Furthermore, the policy designates "underinsured motor vehicle" as a technical term by setting it off in quotations. *See*

*Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 449 (8th Cir. 2016). Thus, the ordinary insured would understand that the "Insuring Agreement" provision does not pay the insured the excess over what the insured received from the tortfeasor.

Additionally, defendant argues that an ambiguity arises because the definition of an "underinsured motor vehicle" coupled with the "Limit of Liability" section guarantee that the plaintiff will never have to pay the full $100,000 coverage limit set forth in the policy's Declarations page. The Missouri Supreme Court rejected a similar argument in *Rodriguez*, stating:

> It is difficult to understand why the mathematical inability to collect a full $50,000 in underinsured motorist coverage renders the coverage meaningless. The effect of underinsured motorist coverage is to assure the [insured] of receiving $50,000, the contracted amount of protection.

*Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 n.1 (Mo. 1991); *see also Burger*, 822 F.3d at 450 ("[D]isputes about the *amount* [the insurer] must contribute simply do not inject ambiguity into the meaning of *what* is a covered 'underinsured motor vehicle' so as to render the UIM definition unclear." (emphasis in original) (internal quotations and citation omitted).

### 3. The Set-Off Provision in the "Limit of Liability" Section

The Limit of Liability section states as follows:

> A. "The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
> 1. "Insureds";

2. Claims made;
    3. Vehicles shown in the Declarations; or
    4. Vehicles involved in the accident. A vehicle and attached "trailer" are considered one vehicle. Therefore, the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer".

  B. The limit of liability shall be reduced by all sums:
    1. Paid or payable because of bodily injury under any workers' compensation act or similar act;
    2. Paid or payable because of bodily injury under any disability benefits;
    3. Paid or payable under any auto medical payment, no-fault or personal injury protection insurance.

  C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

  D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

  **E. Any amount otherwise payable for damages shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.**
  **F.**

[Doc. #1-1 at 34 (emphasis added)].

Defendant cites *Miller, Jones, Ritchie,* and *Fanning* to generally assert that "these set-off provisions" create ambiguity. [Doc. #21 at 12]. No specific argument is offered as to *how* this provision is vague; defendant merely notes that the set-off provision here is "nearly identical" to that in *Miller*. *Id.* But here, "the policy [is] clear that any prior payments would be deducted from the coverage amount," and does not create any confusion regarding the reduction by the statutory minimum amount of liability coverage required in Missouri. *Miller,* 400 S.W.3d 779, 789–90 (Mo. Ct. App. 2013) (quoting *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 692 n.3 (Mo. 2009)). Moreover, "[e]ven if the policy did contain inconsistent statements

13

about the amount of coverage due once coverage has been triggered, such inconsistency would be immaterial to the question at issue here: whether the policy provides for coverage at all." *Burger*, 822 F.3d at 450. "Nothing in [the] UIM limit-of-liability section undermines the requirement that a tortfeasor's vehicle first must qualify as underinsured in order to trigger UIM coverage." *Id.*

### 4. The "Other Insurance" Provision

Defendant, citing to *Ware v. Geico General Ins. Co.*, 84 S.W.3d 99 (Mo. Ct. App. 2002), contends that the "other insurance" clause creates confusion and, consequently, "underinsured motorist coverage should be afforded" to defendant. [Doc. #21 at 13]. The other insurance provision states:

**OTHER INSURANCE**

If there is other applicable underinsured motorists coverage available under one or more policies or provisions of coverage:

1. Any recovery for damages under this coverage may equal but not exceed the highest applicable underinsured motorists coverage limit under this policy or other underinsured motorists coverage providing coverage on either a primary or excess basis.
2. This policy provides primary underinsured motorists coverage where "your covered auto" is involved. Where this policy provides underinsured motorists coverage on a primary basis, we will pay only our share of the loss. Our share is the proportion that our limit of liability as stated in the Declaration bears to the total of all applicable underinsured motorists coverage under other policies that apply on a primary basis.

3. However, for any underinsured motorists coverage we provide with respect to a vehicle you do not own, this policy will be excess and will apply only in the amount that our limit of liability as stated in the Declarations exceeds the sum of the applicable limits of liability of all other applicable underinsured motorists coverage limits have been paid.

[Doc. #1-1 at 17].

There is no other "underinsured motorist coverage from another insurer" that is involved in this case, and thus this provision is inapplicable. *See, e.g., Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 871 (E.D. Mo. 2015). Further, the Court finds no conflict or ambiguities arising from this provision, and thus *Ware* is inapposite. As the Eighth Circuit explained in *Burger*, "Missouri courts have found ambiguity where a policy's 'other insurance' clause suggests that UIM coverage is excess over any contributions from a tortfeasor." *Burger*, 822 F.3d 445, 450 (8th Cir. 2016). Here, as in that case, the clause is "'appropriately limited in that it is addressed only to the possibility of other applicable UIM coverage under other policies,'" and thus "[s]uch language does not suggest that Allied always will cover damages over and above the contributions of a tortfeasor's insurer." *Id.* (internal citation omitted).

### 5. **Representations on Plaintiff's Website**

Defendant argues that representations on plaintiff's website create a reasonable expectation that the policy's UIM provision covers uncompensated damages. Defendant contends that these statements contribute to the ambiguity within the policy itself.

The Court agrees with plaintiff that defendant has failed to establish a foundation for the documents purportedly obtained from plaintiff's website. Fed. R. Civ. P. 56(c)(2).[1] But, even if the documents were admissible, they would not have

---

[1] Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Specifically, plaintiff claims that Exhibits B and C, which purportedly are printouts from plaintiff's website, lack foundation. [Doc. #23 at 2]. Federal Rule of Evidence 901 requires that such documents be authenticated. "A party authenticates a document by presenting evidence sufficient to support a finding that the document is what the party

15

any impact on the interpretation of the insurance policy here. That is because, "[i]f a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by parol or extrinsic evidence." *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 871 (E.D. Mo. 2015) (citing *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 67 (8th Cir. 1994)). Accordingly, any external evidence on plaintiff's website has no evidentiary value in this case.

***

For the reasons discussed above, the Court finds that the insurance policy issued by plaintiff to defendant is not ambiguous. The Court further finds that the defendant was not injured by an underinsured motor vehicle, as defined in the policy, and she is therefore not entitled to coverage under the UIM provision of the policy.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. #15] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of January, 2017.

---

claims it to be." *United States v. Wadena*, 152 F.3d 831, 834 (8th Cir. 1998). "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000). This Court has previously ruled that unauthenticated website printouts attached as exhibits to summary judgment motions or responses are not admissible. *Real Estate Network, LLC v. Gateway Ventures, LLC*, No. 05-CV-422-CAS, 2005 WL 1668194, at *3 (E.D. Mo. July 12, 2005).